# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### WICHITA FALLS DIVISION

KERRY Tipps,
TDCJ No. 714441   Plaintiff.

)
)
)
)
)
)   Civil No. 7:08-CV-104-O
)
v.   )
)
)
)
)
TOMMY L. NORWOOD, et al..   )
　　　　　Defendants   )

U.S. DISTRICT COURT
NORMERN DISTRICT OF TEXAS
**FILED**

FEB 25 2010
4:00pm

CLERK, U.S. DISTRICT COURT
By _____
　　　　Deputy

## Amended Complaint

TDCJ officials on the Wrong Side of the law. And just because someone wears a law enforcement badge does not mean they are deserving of respect. In fact, corrections involved in recent scandals are some cases headed to prison or jail themselves, or have joined the ranks of the unemployed. I will never tolerate offender abuse.

Plaintiff has taken swift action, decisive action since incidents has occured. Plaintiff goal is to rid the Texas prison system of the mindset of intentional battery on an offender and submitting inaccurate, incomplete or untruthful information. Due to negligence in failing to perform their job duties, with significant failure in the supervision of personnel in the prison, and that many of the jail operating procedures have been covered up by "applied standard operational procedures guideline coverup, for quite some time - some for several years. Official oppression for staging assaults on plaintiff, official misconduct and corruption with unlawful compensation during official duties under the color of state law. Plaintiff intend to bring the full resources of this agency to bear on the individuals responsible for this violent state of mind requirement. including prosecution, termination and decertification, so they can never work in correctional environment again." <u>There is no place in this profession for this depraved mindset."</u>

The above-described shameful incidents have a common thread: They all involved law enforcement correctional officials who took an oath to uphold the law. Instead Defendants, they used their positions for personal gain or to fulfill their own selfish or sadistic desires, thereby breeding disrespect for the law. under the color of state law. After all who can you trust when sherriffs, jailers and prison guards end up behind bars themselves? subjected to retaliation in the form of "major and minor misconduct disciplinary cases issued against the offender. Who is watching the watchers of my constitutional rights. Defendants engaged in soliciting subordinates to commit civil rights violations. Apparently, not even the daily reminder of crime's consequences can keep some prison, jail and law enforcement officials from breaking the law and abusing their public positions. Then

again, and to show their authority. Power to make them feel untouchable, which leads them to commit crimes as state government employees under the color of state law, deliberately violating the rights of offenders they are employed to protect.

Defendants use their position to secure "privileges and advantages, losing their objectivity, negligence, doing secret and dishonesty for failing to cooperate with an investigation. Have all participated an attempt to convey contraband onto the grounds of a detention facility. Offender allegations that corrections officers made several threats to kill the offender, have him killed, or have him beaten were sufficiently serious to form the basis of an injury, as required to support offenders Eighth Amendment claim; the officers allegedly made numerous unsuccessful offers of payment to other offenders to assault the plaintiff; officers labeled offender a snitch in an effort to induce offenders to attack plaintiff, and even armed their "special relationship" offenders with weapons for use in such an attempt. Plaintiff alleges that these incidents were in retaliation for his bringing an earlier version of his lawsuit and constituted an effort to intimidate him from proceeding further with it. During the time period encompassing these events, Defendants and their subordinates continued to harass, retaliate, engage in criminal activity under the color of state law to have plaintiff assaulted or killed. Prison officials were deliberately indifferent to a serious risk of harm to the plaintiff. No legitimate penological purpose could have been served by defendants' conduct, and their actions toward Tipps demonstrated a state of mind that was merely deliberately indifferent, but also sadistic and malicious. Thus, the defendants' subjective intent is sufficiently culpable. Prison officials are bound by the Eighth Amendment to take "reasonable measures to guarantee the safety of the offenders. Plaintiff is "incarcerated under conditions posing a substantial risk of serious harm." (stating that a substantial risk of unnecessary infliction of pain is an unconstitutional condition of confinement). "gratuitously allowing the beating... of one offender by another serves no legitimate penological objective." "being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society." Is an object lesson for corrections "professionals" in what should never be done to another

human officials set up hit at B-Turnout to lure me to medical claim that I refused but understood the plan and plot to have me killed with two offenders "Mexicans" assigned to A-side who all refused medical claim as well. What a coincidence! The court previously declared it "appalling" that prison officials would punish prisoners for filing lawsuits. Defendants not only failed to take reasonable measures to guarantee Tipps safety as required by the Eighth Amendment they intentionally brought danger to me. They themselves were a large part of the "conditions posing a substantial risk of serious harm" even death to Tipps. We have made an exception, however, when the state official engaged in a "brutal" and "wanton act of cruelty" even though no physical harm was suffered. In *Burton* "a prisoner retain at least the right to be free from the terror of instant and unexpected death at the whim of his... custodians." In *Arnold*, a conspiracy between guards and offenders to kill Tipps is actionable only after an aborted attempt on Tipps life as of January 6, 2010. The Fourth Circuit found that "intentionally placing Tipps in fear for his life if he pressed his court actions... would inflict such suffering as to amount to unconstitutional punishment." When viewing in the light of their retaliatory nature, their objectively credible basis, and their fear inducing result, the continued attempts made by Defendants form the basis of an injury sufficiently serious to implicate the Eighth Amendment.

Defendants made numerous attempts to kill Tipps, to have him killed or to have him beaten. Defendants made numerous offers of illegal contraband to assault and even kill Tipps. Defendants labeled Tipps a snitch in an effort to induce offenders to attack him and even armed "pet" offenders with weapons for such use in such an attempt. These are not instances of mere verbal abuse resulting only in hurt feelings, but rather are more properly analogized to a case in which "a prison guard without provocation, and for the apparent purpose of retaliating against the offender's exercise of his rights in petitioning a

federal court for redress, terrorized the offender with threats of death.

Defendants ongoing nature, combined with concrete, affirmative efforts to persuade other offenders to assault even kill Tipps, and their attempts to arm Tipps enemies, makes the claims sufficiently comparable. Tipps case is stronger than that of the offender in Hudsoth because of the greater number of threats made and the stronger confirmations of the threats credibility. As the Court held almost a quarter century ago, "Subjecting prisoners to ... constant fear of such violence [] shocks modern sensibilities and serves no legitimate penological purpose." The repeated and credible threats against Tipps, if proved to be true, constituted brutal and wanton acts of cruelty that served no legitimate penological purpose and posed a substantial risk of serious harm to Tipps future health. It is clearly establish by Burton that a guard is not permitted to threaten an offender with death by means readily at hand. It should have likewise been clear that a guard may not threaten an offender with death by means of arming, bribing, and inciting other offenders to accomplish that which the guard may not do directly. No reasonable prison guard would have believed that no constitutional right would be violated by such conduct, and thus the district court correctly denied qualified immunity to defendants.

After all, who better knows the opprobrium and consequent effect thereof that attaches to the label of snitch than those who work daily within the offenders population. Defendants perverse disputing of men of corrupt minds, and destitute of the truth." Whether or not we ultimately determine that other officers committed crimes against offenders, any officer who obstructs our efforts to find the truth should expect to be arrested and charged with serious felony offenses." said U.S. Attorney David Naltnias. Defendants on January 6, 2010 at B-Turnout plaintiff was mysteriously schedule to all of a sudden go on medical chain to be killed by (2) mexican gang member, but plaintiff refuse to go and also the hit men refuse also.

All parties mentioned Dr. Totten, who tried to persuade me to go Major Hargrove, in misleading conduct toward another person, with intent to kill. Perverse disputing of men of corrupt minds, and destitute of the truth. Plaintiff inside information is irrefutable. Defendants secret counsel of wickedness, insurrection, and their works of iniquity encourage themselves in an evil matter: they commune of laying snares privily; inward thought of every one of them. Thus, it is well settled that a offender has a constitutional right to be protected from the constant threat of violence and from physical assault by other offenders. Defendants 'deliberately indifferent to [a prisoner's] constitutional rights, because they actually intended to deprive Tipps of his right, because they acted with reckless disregard of his right to be free from violent attacks by fellow offenders." Defendants breaches a duty imposed by state or local law, and this breach causes plaintiff's constitutional injury: "Here," the inquiry into causation is a directed one, focusing on the duties and responsibilities of each of the individual defendants whose acts or omissions are alleged to have resulted in a constitutional deprivation." Outlines the goals of the department. These include "the protection of the offender from victimization within the institution. Since operation of the Texas prison system results in a conscious and callous indifference to Tipps rights, a constitutional tort has been committed. There is no question about the legal principle that where prison supervisors with knowledge of "a pervasive and unreasonable risk of harm" to the offender, fail to take reasonable remedial steps to prevent such harm" to the prisoners, fail to take reasonable steps to prevent such harm, their conduct may be properly characterized as "deliberate indifference" or as "tacit authorization of the offensive acts," for which they may be held independently liable under § 1983.    Standard for providing basic human needs to those incarcerated or in detention is the same under both the Eighth and Fourteenth Amendment. U.S.C.A Const. Amends. 8, 14.

"constitutional law. Prison officials deliberate indifference to known, substantial risk of serious harm to offender violates the Fourteenth Amendment when substantial risk of serious harm, of which the defendants is subjectively aware, exists and the defendants does not respond reasonably to the risk; such risk was objectively substantial risk of serious harm to prisoners, prison officials must respond to that risk in objectively unreasonable manner, and plaintiff has shown that his constitutional violation was clearly establish. Supervisory liability under § 1983 occurs either when supervisor personally participates in the alleged unconstitutional conduct or when there is casual connection between actions of supervising official and alleged constitutional deprivation; necessary casual connection can be established when history of widespread abuse puts responsible supervisor on notice of need to correct alleged deprivation and he fails to do so, or alternatively when supervisor's custom or policy results in deliberate indifference to constitutional rights or facts support inference that supervisor directed (Hit). (plot) 1-06-10 with subordinates who assisted the (two) offenders with a act of unlawfullness and failed to stop them from doing so because defendants wants Tipps dead. Plaintiff amended complaint sufficiently alleges a constitutional violation, its gots to be determine whether preexisting law clearly established that the defendants' conduct amounted to a constitutional violation.

"Because [the defendant]'s conduct violated a constitutional right, the next question is whether that constitutional right was 'clearly establish' at the time of the violation." The relevant, dispositive inquiry in determining whether a right is clearly establish is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he establish and confronted. In making this inquiry, "the salient question ... is whether the state of the law ... gave [the guards] fair warning that their alleged [conduct] was unconstitutional." Hope, 122 S.Ct. at 2516. Plaintiff conclude that prior factually similar case law give fair and clear warning to defendants' it is their duty to protect Tipps, constitutes unconstitutional deliberate indifference to Tipps Fourteenth Amendment rights. The plaintiffs allege that the defendants were on notice of the continuous unconstitutional conduct at the James V. Allred Unit through the con-

sent clearance regarding such conduct.

Defendants "fail[ed] to take reasonable measures to abate" a known risk of harm cause the evidence showed that they knew of ways to reduce the harm but knowingly declined to act, while carrying out the act and participating in an unlawful act under the color of state law. They knew of ways to reduce the harm but recklessly declined to act. Unit has a Safe Prison Program that has never been the issue to assist Tipps. And I'm discriminated on to go to to A-side where all special relationship offenders are housed. Five years on B-side is enough proof that racial discrimination is being conducted towards plaintiff, especially when they move someone in my cell and remove me out of the bottom bunk to too. Defendants has the capability, including the authority and means, to provide adequate security and did not do so. Defendants failure to control illegal activities, inadequate supervision, lack of investigation of incidents with applied standard operational procedures guideline cover-up under a code of silence. Revelant inquiry in former warden participation in the allege plots, and attempted murder of Tipps. actually supervise his subordinate in corruption. Evidence defendant knew that actions they took would be insufficient to provide offender with reasonable protection from violence. defendant set in motion the events to assault, even kill plaintiff. Providing casual link between the infirm conditions and between the unconstitutional conditions suffered by offender as result of violence inflicted by state employees. Requisite causal nexus between Defendants means to correct alleged constitutional infirmities and that defendants recklessly disregarded the inadequacy of the approach which they took that resulted in a § 1983 the availability of other approaches and the capacity to provide a cure. Causation in civil rights action brought against prison warden and his subordinates based on alleged Eighth Amendment violations should have been circumscribed by the knowledge which the Defendant possessed concerning inadequacy of measures which he was taking at the time of each grievance for which Tipps sought relief, especially were conditions were severe to cause bodily harm even death during his tenure as Assistant Warden. applying standard operational guideline cover up procedures. "On an almost daily basis I feel that Defendants staff is simply being tolerated by offender population rather than being in control of the operation of the institution. The presence of corruption of staff under Defendants' tenure were accepted as part of

of unit gadgets of contraband and profile of sender. The payoff is the contraband compounded by staff corruption as defendants contributed to and apparently profited from the contraband and issue rank out and utilized prisoners to "do their dirty work" and profit by the defendant extortionist objective to kill their cancerous offender who fight against injustice. When alerted to specific danger, defendants staff looked the other way rather than protect plaintiff.

Several management problems persisted during Defendants' tenure as warden: low morale among the prison's staff, high employee turnover (leading to a less experienced staff), high vacancy rates for staff positions, due to their sexual preference and manipulation of sexual favors for job positions, and inadequate supervision of employees. Certain of the prison's standard operating procedures were insufficient to protect Tipps safety when the officials is aiding a homicide on the facility he control. Some of the reported incidents were not investigated at all. The lack of such procedures created an atmosphere of tolerance for scandals of officials corruption, which enhanced the risk that incidents would occur. Tipps visual documentation of experiencing an atmosphere where offenders could be killed assaulted by other vulnerable offenders without concern of being detected or deterred, because its all plain out by the defendants here in Tipps case. Defendants overall laxity in managing and controlling his staff directly contributed to an unconstitutional condition of confinement at JVA consisting of an undeterred atmosphere of violence." Did you receive instructions or guidelines on the responsibilities and supervisory functions of your job when you became supervisor Warden? Defendants view did not take threat of of offender violence seriously enough. In particular, they failed to ensure that JVA policies designed to protect prisoners, including court level of investigation injunction relief. Defendant ambitious was intent to cover-up plaintiff cry for help alleged in grievous procedures. Plaintiff argue that defendants know of specific threats he arranged along with his chosen subordinates, All play they role on a daily basis. First, the condition must have inflicted unnecessary pain or suffering upon the plaintiff. This objective standard "embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency ...." but must be balanced against competing penological goals. Defendant wantonly permitted the constitutionally infirm condition to persist. Defendant "deliberate indifference" constitutes wantonness. Defendant possessed knowledge both of the infirm condition and means to cure that condition "so that a conscious culpable refusal to to prevent the harm can be inferred from the defendants failure to prevent it by being cause and effect of design murder plots in reta-

liation for filing lawsuit and anti harassment "speech" tactics with defendants. Defendants failed to ensure that his direct subordinates followed the policies he established, and defendants knowingly "fail[ed] adequately to correctional officers up to the Assistant warden leve[l] resul[ting] in corruption and incompetence among the officers and a lack of reasonable protection of plaintiff. Plaintiffs "demonstrate that a particular defendant [nevertheless] had the capability (authority and means) to provide adequate security and did not do so. But defendant extorted all gangs, blacks, mexicans, with illegitimate contraband to kill plaintiff on a daily basis. The most recent attempt is January 6, 2010.

## C.J.S. RICO (Racketeer Influenced and Corrupt Organizations)

§ 2. U.S. Tex. 1997. Predominant elements in substantive Racketeer Influenced and Corrupt Organizations Act (RICO) violation are: (1) defendants conduct (2) Defendants illegal enterprize establishment with gang in prison (3) through pattern of racketeering activity. 18 U.S.C.A. § 1962 (c). Salinas v. U.S., 118 S.Ct. 469, 522 U.S. 52, 139 L. Ed. 2d 352

C.A.5 (Tex.) 1998. To state civil claim under Racketeer Influenced and Corrupted Organizations Act (RICO), plaintiff must allege (1) conduct (2) of enterprise (3) through pattern (4) of racketeering activity. 18 U.S.C.A. § 1962. Price v. Pinnacle Brands, Inc., 138 F.3d 602, rehearing denied.

C.A.5 (Tex) 1996. Racketeering Influenced and Corrupt Organizations Act (RICO) claims require: person who engages in: pattern of racketeering activities; connected to the acquisition, establishment, conduct, or control of an enterprise. 18 U.S.C.A. § 1962 (c.d). Word of Faith World Outreach Center Church, Inc. v. Sawyer, 90 F. 3d 118, certiorari denied 117 S.Ct. 1248, 520 U.S. 1117, 137 L.Ed. 2d 329.

Defendants are: (1) persons who have engaged in "Organized criminal activity" includes a combination of three or more persons carrying on one or more criminal offenses by engaging in either a single criminal activity or multiple criminal activities. V.T.C.A. Penal Code §§ 71.01(a), 71.02(a)(1). State v. Minor. 981 S.W. 2d 481, rehearing overruled, petition for discretionary review granted 9 S.W. 3d 835.

Tex. App.- Tyler 1994. Gravamen of offense of engaging in organized criminal activity is working together with specified number of others in specified criminal activities to accomplish crime. V.T.C. A., Penal Code § 71.02. Rainey v. State, 877 S.W. 2d 48.

Tex. App.- Eastland 1998. To be convicted of organized criminal activity, Defendants has committed and conspired to commit numerous

enumerated offense criminal group. V.T.C.A., Penal Code §§ 71.01(a), 71.02(a)(1). State v. Miner, 981 S.W. 2d 481, rehearing overruled, petition for discretionary review granted 9 S.W.3d 835. S.D. Tex. 1995. For of establishing Defendant's pattern of RICO racketeering activity, proof of multiple criminal schemes is not necessary to show pattern. 18 U.S.C.A. § 1961(5). Benton v. Archer Chrysler Plymouth, Inc., 889 F.Supp. 995. C.A.5 (Tex) 1996. "Pattern" of racketeering activity, required for civil Racketeer Influenced and Corrupt Organizations Act (RICO) claims are related and threaten continued criminal activity. 18 U.S.C.A § 1961. Word of Faith World Outreach Center Church, Inc. v. Sawyer. 90 F.3d 118, certiorari denied 117 S.Ct. 1248, 520 U.S. 1117, 137 L.Ed.2d 329. Relatedness of racketeering acts, required to establish civil claim under Racketeer Influenced and Corrupt Organization Act (RICO) is establish if acts have same or similar purposes, resulted, participants, victims, or methods of commission. "Continuity" of racketeering activity or threat of racketeering activity, required for civil claim under Racketeer Influenced and corrupt Organizations Act (RICO) is satisfied by showing of either closed period of conduct that by its nature projects into future with threat of repetition; closed period of conduct may be demonstrated by proving series of related predicates extending over substantial period of time, while open period of conduct involves threat of continued racketeering activity. Defendants; racketeering predicates must be related and amount to or pose threat of continued criminal activity. Plaintiff has shown that racketeering activities have been sufficiently continuous, that they relate to each other, and that they relate to threat of continued criminal activity. "association in fact" Defendants ongoing organization, with associates functioning as continuing unit; ongoing organization is shown by existence of decision-making structure, whether hierarchical or consensual. Defendants have common or shared purpose and continuity of structure and personnel. Requisite enterprise elements of claim the existence of a group of individuals who are associated-in-fact. "association-in-fact" is an ongoing organization with members functioning as a continuing unit. "association-in-fact consists of defendants who share a common purpose and collectively form a decision-making structure to murder Tipps.

Defendants take part in operation of enterprise, not that he direct